UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
HILDA MAYER,

                        Plaintiff,

    -against-

NEUROLOGICAL SURGERY, P.C. and
DR. MICHAEL BRISMAN,

                        Defendants
-------------------------------------------------------X

**MEMORANDUM & ORDER**
15-CV-0864(DRH)(ARL)

**APPEARANCES:**

For Plaintiff:
Wigdor LLP
85 Fifth Avenue
New York, New York 10003
By:    David E. Gottlieb, Esq.
         Elizabeth J. Chen, Esq.
         Alex J. Hartzband (admission pending)

For Defendants:
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
1133 Westchester Avenue
White Plains, New York 10604
By:    Steven L. Young, Esq.
         George M. Melo, Esq.

**HURLEY, Senior District Judge:**

Plaintiff Hilda Mayer ("plaintiff" or "Mayer") commenced this action against Neurological Surgery, P.C. ("NSPC") and Dr. Michael Brisman ("Brisman") asserting causes of action under New York Labor Law §215, the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*,, the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). (DE 1)  Defendants moved to dismiss the first, sixth, seventh and eighth causes of action, which motion was referred to Magistrate Judge Arlene R. Lindsay.

By Report and Recommendation filed December 21, 2015 ("R&R"), Judge Lindsay recommended that the four causes of action be dismissed but that plaintiff be granted leave to replead the three claims under the New York City Human Rights Law (claims six, seven and eight). Presently before the Court are defendants' objection to the R&R. The sole objection is to that part of the R&R which, as described by defendants, declined to consider "a fully-briefed argument concerning the waiver of Plaintiff's claims based on the initiation of a NYLL whistle blower claim . . . [as] raised for the first time in a reply." Defs.'Objections (DE41) at p. 1.

**FACTUAL BACKGROUND**

The following facts are taken from the amended complaint.[1]

In August 2007, Mayer began working for NSPC as a Marketing Representative. Am. Compl.¶ 25. Brisman was the CEO of NSPC and Mayer's direct supervisor. *Id.* § 24. Mayer was responsible for planning and setting up various events, the purpose of which was to introduce NSPC physicians to potential referring physicians. *Id.* ¶ 26. She also organized patient events, wrote newsletters, and created advertising mailers. *Id.*

In or around December 2013, Mayer was diagnosed with cancer. *Id.* ¶ 30. She relayed her diagnosis to the Brisman and to Linda Sofio ("Sofio"), the office manager. *Id.* ¶ 31. Although Mayer wanted to keep the matter confidential, Brisman told Mayer that he needed to tell his wife, who Mayer knew outside of the workplace; word then spread around the office that she had cancer. *Id.* ¶¶ 32-33.

Mayer contends that she suffered abuse as a result of her diagnosis. *Id.* ¶¶ 35, 38. She

---

[1]By stipulation of the parties, so ordered by the Court, the complaint was amended to add a claim under the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.* with the fully submitted motion to dismiss operative as to the Amended Complaint. (DE 29, 30.)

states, by way of example, that during a regularly scheduled marketing meeting, Brisman raised the issue of rising health insurance premiums and pointedly asked Mayer if the chemotherapy drugs she was taking were brand name or generic. *Id.* ¶ 48. Brisman had previously expressed his view that, absent an emergency, people should use generic drugs and so he pressed Mayer to speak to her physician about using generic chemotherapy drugs. *Id.* ¶¶ 40, 49. Brisman also demanded that Mayer wear a wig to work and keep her chemotherapy pump covered because her thin hair and the pump were making people uncomfortable. *Id.* ¶¶ 50, 51.

In July, while Mayer was out of the office having surgery, she was once again targeted at a marketing meeting as the prime cause of rising costs of medical benefits at NSPC. *Id.* ¶ 52. Specifically, Brisman ranted that his costs for healthcare were out of control because of excessive employee healthcare usage. *Id.* In response to his rant, an employee asked, "Like Hilda, because she has cancer?" Brisman's colleague, Dr. Mihai Dimancescu, replied:"Exactly." *Id.* Following the meeting, an inter-office memorandum from Brisman was sent out that targeted employees like Mayer who were receiving medical treatment inconsistent with maximizing NSPC profits. *Id.* ¶ 53. In the memorandum, Brisman asked his employees to select medical options that would result in lower costs to NSPC. *Id.* He also explained to his staff that he would be the one to bear the burden of any increased health insurance expenses. *Id.* Brisman then offered some suggestions for lowering costs, including using generic instead of brand medicines, using urgent care centers instead of emergency rooms, using outpatient rather than impatient workups, and losing weight. *Id.* ¶ 54.

Mayer also contends that she was also given a hard time about her schedule. Throughout her chemotherapy, Mayer managed to work full-time. *Id.* ¶ 57. However, her requests to attend

doctor's appointments were met with hostility. *Id.* ¶ 58. In or around October, Brisman quizzed Mayer on her need to take time off, stating: "How many more procedures will it take? When is enough enough? Don't we know what's wrong with you? You know who pays for it?" Brisman then pointed to his pocket, as he exclaimed: "I do!" *Id.* ¶ 59.

Throughout this time period, Mayer complained about the way she was being treated but to no avail. *Id.*¶¶ 56, 60. Indeed, following her complaints of discrimination, Brisman complained that she was not generating a sufficient number of referrals. *Id.* ¶ 62. When Mayer argued that if "a referral elects not to have surgery, it is out of her control," Brisman responded, "That's what I pay you for, to change their minds." *Id.* Mayer contends that other marketing employees with less tenure - but who were healthy- were treated far better. *Id.* ¶ 64.

On December 17, 2014, Mayer raised claims of discrimination in a letter written by her counsel. *Id.*, ¶ 66. Mayer also accused NSPC and Brisman of engaging in unethical conduct by telling her to persuade patients to have surgical procedures. *Id.* Two days later, Mayer was called into a meeting with Brisman and Sofio to discuss the allegations raised in her letter. *Id.* ¶¶ 67, 68. According to Mayer, Brisman went through the letter point-by-point and attempted to engage her on all of the allegations of discrimination and retaliation. *Id.* He also accused her of being a "yenta." *Id.* ¶ 69. Brisman told Mayer that she was incapable of doing her job given the allegations, and questioned how she could continue to work at NSPC if she really thought the environment was so terrible. *Id.* ¶ 70. Brisman then asked Mayer if she intended to be at work on Monday. *Id.* When Mayer assured Brisman that she would be at work, he stated: "Why do you even want to work here if you think no one likes you?" *Id.* Brisman then blamed Mayer's illness and treatment as the reason she felt discriminated and retaliated against. *Id.* at ¶ 72. Less than one

month later, Mayer was fired. *Id*. ¶ 74.

## PROCEDURAL BACKGROUND

On February 28, 2015, Mayer commenced this matter asserting eight causes of action:

1. Whistleblower Retaliation in Violation of New York Labor Law § 215;

2. Retaliation in Violation of the FMLA;

3. Discrimination in Violation of the NYSHRL;

4. Retaliation in Violation of the NYSHRL;

5. Aiding and Abetting Violation of NYSHRL against Brisman;

6. Discrimination in Violation of the NYCHRL;

7. Retaliation in Violation of the NYCHRL;

8. Aiding and Abetting Violation of NYCHRL against Brisman.

Id. ¶¶ 75-112.

On June 26, 2015, the defendants moved to dismiss the First, Sixth, Seventh and Eighth causes of action, contending that the complaint is wholly devoid of any facts to support a New York Labor Law or a New York City Human Rights Law claim. *See* DE 20-22.

In support of the motion to dismiss the New York Labor Law claim, defendants argued:

> Plaintiff cannot state a claim for discrimination and retaliation under NYLL §215 where no claim of an underlying predicate NYLL violation is plausible. Here, the First Cause of Action asserts two alleged violations. First it is asserted that by asking the Plaintiff to "'change the minds' of patients as to whether to have invasive surgery' and to "'sell' surgeries like they are 'car salesmen'" (Complaint ¶ 79), the Defendants violated NYLL § 741, a statue intended to protect health care workers who complain about unsafe medical practices. Second, it is asserted that by "discouraging employees from utilizing their health insurance coverage, discouraging employees from following the advice of their

5

> physicians and/or providing medical advice to employees without knowledge of their medical condition or circumstances" (Complaint¶ 80) the Defendants violated NYLL § 200, a statue intended to protect employees who complain about a dangerous workplace. As will be shown below, neither section applies to the facts presented.
>
> The NYLL prohibits retaliation against an employee because he or she "has made a complaint to his or her employer . . . that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision" of the NYLL. Further, a plaintiff must allege "a nexus between the employee's complaint and the employer's retaliatory action." *Higueros v. N.Y State Catholic Health Plan, Inc.*, 526 F. Supp. 2d 342, 347, 2007 U.S. Dist. LEXIS 88631 (E.D.N.Y. 2007). Thus, to demonstrate a prima facie case, a plaintiff must establish: "(l) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005). Under the NYLL, plaintiffs must show that they complained about a specific violation of the Labor Law. While an employee need not cite a specific statute, the complaint to the employer must be of a colorable violation of the statute.
>
> As predicates for the NYLL§215 claim, Plaintiff alleges having complained of violations under NYLL §200 and/or §741. *See* Complaint ¶78. Defendants contend that neither NYLL §200 or §741 are implicated or apply. None of the conduct complained of in the Complaint gives rise to a NYLL violation and thus, Plaintiff cannot state a plausible NYLL §215 claim. Absent underlying predicate violations, Plaintiff has legally failed to plead enough facts to state a "Whistleblower Retaliation" claim under NYLL §215.

Defs. Mem. in Supp. at p. 5-6.

Plaintiff opposed the motion to dismiss arguing, in relevant part, that Section 215 of the NYLL prohibits retaliation against an employee because he or she "has made a complaint . . . that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision" of the NYLL and she "alleged – quite plainly – that she made good faith

complaints regarding violations of Section 200 and 741, and she was subject to unlawful retaliation." Pl.'s Mem. in Opp. at 13.

In their reply, defendants argued waiver for the first time:

> As a matter of law by commencing a healthcare whistleblower violation claim, Plaintiff has irrevocably waived her remaining related claims. Dismissal of all of Plaintiff's claims is statutorily mandated irrespective of the disposition or outcome of those claims - "[t]he commencement of a retaliatory discharge action under the health care whistleblower law [NYLL § 741] acts as an election of remedies, **waiving other causes of action** . . . **irrespective of the disposition of such claims**." As has long been recognized, the purpose of the statute's waiver provision is to "prevent duplicative recovery." Irrevocable waiver is the only logical conclusion because claims premised on NYLL § 741 expressly rely on and incorporate NYLL § 740(4) for purposes of enforcement through a civil action.

Defs.' Reply Mem. at 2 (emphasis in original) (footnotes omitted).

It is Judge's Lindsay's refusal to consider this waiver argument that forms the basis of defendants' objection to the R&R.

## DISCUSSION

Judge Lindsay declined to consider the waiver argument stating:

> In their reply, the defendants argue, for the first time, that the commencement of a retaliatory discharge action under NYLL § 741 operates as a waiver of the rights and remedies available under any law. See NYLL §740(7). In doing so, they expand their initial request for relief and seek dismissal of the plaintiff's NYSHRL and NYCHRL causes of action. The court will not consider the plaintiff's waiver argument. "It is the law of the Second Circuit that courts are not to consider arguments raised for the first time in a reply." *Stoeckley v. Cty. of Nassau*, No. CV 15514 (LDW)(AKT), 2015 WL 8484431 (E.D.N.Y. Dec. 9, 2015)(citing *Mullins v. City of New York*, 653 F.3d 104, 118 n.2 (2d Cir. 2011) (declining to consider argument raised for the first time in a reply brief)).

7

R&R at p. 12 n.3.

Defendants maintain that the instant case is distinguishable from the cases cited by Judge Lindsay. First, "the plaintiff was afforded and took full opportunity, in eight pages of the ten page sur reply, to respond to Defendants' waiver argument." (Defs.' Objections at 1.) "Second, only in Plaintiff's Opposition papers to the motion was it made clear for the first time that the acts that underlied the Plaintiff's retaliation allegations also formed the basis of the NYLL whistleblower claim [and t]hus Defendants' first opportunity to raise the NYLL waiver argument came by way of their Reply." (*Id*. at 1-2.) The Court is underwhelmed with both these arguments.

The law in this Circuit is clear that arguments raised for the first time in reply briefs need not be considered. *See, e.g., EDP Med. Computer Sys., Inc. v. United States,* 480 F.3d 621, 625 n.1 (2d Cir. 2007); *Cotona v. Fed. Bureau of Prisons*, 2013 WL 5226238, at *2 (S.D.N.Y. Oct. 7, 2013( ("[A]rguments raised for the first time in a reply memorandum are waived and need not be considered.") Nor do the circumstances of this case lead to a different result. Upon service of the reply, plaintiff promptly filed a letter motion to strike "argument raised - and relief  requested- for the first time in  Section I of [defendants'] reply papers" and only in the alternative sought leave to file a surreply to address these arguments. (DE 27.)  The Court then entered the following Order on the motion to strike: "The motion is granted to the extent that plaintiff may serve and file a sur-reply on or before July 9, 2015. To the extent plaintiff seeks to strike the newly raised argument and request for relief in Section I of the reply papers, the Court shall address the motion to strike in its decision on the motion to dismiss." (Electronic Order entered July 1, 2015.)  It is clear from the Court's Order that plaintiff's request to strike would be preserved and addressed in the motion's resolution even if plaintiff took advantage of the

8

opportunity to file a surreply[2] and that the Court reserved the right not to consider the newly raised argument. To hold otherwise would encourage the raising of new arguments in a reply.

Moreover, the Court rejects the assertion that it was only after the opposition papers were filed that the basis for the whistleblower claims were made clear in view of the following allegations from the complaint regarding the whistleblower retaliation claim brought pursuant to New York Labor Law § 215:

> 78. The section of Chapter 31 of the NYLL which are implicated by Plaintiff's complaint include, inter alia, NYLL §§ 741 and 200.
>
> 79. Defendants violated NYLL § 741 when they retaliated against Plaintiff, up to and including her termination, because she objected to and/or disclosed and/or threatened to disclose a policy or practice of Defendants that she reasonably believed constituted improper quality of patient care; namely, that Marketing Representatives should "change the minds" of patients as to whether to have invasive surgery, and that Marketing Representatives should "sell" surgeries like they are car salesman."
>
> 80. Defendants violated NYLL § 200 when they retaliated against Plaintiff, up to and including her termination, because she objected to and/or opposed Defendants' practice of discouraging employees from utilizing their health insurance coverage, discouraging employees from following the advice of their physicians and/or providing medical advice to employees without knowledge of their medical conditions or circumstances.

Compl. at ¶¶ 78-80. *See also* Pl.'s Opp. to Request to File Motion to Dismiss (DE 12). Additionally, as plaintiff aptly states, defendants' excuse is "ineffectual" as "any clarification as to which facts underlie the whistleblower claim is immaterial to Defendants' argument" that "the mere initiation and filing of a NYLL § 741 claim mandates the dismissal of all other claims."

---

[2] The first point in plaintiff's surreply was that "Defendants Waived New Arguments Raised in Reply." Pl.'s Surreply at p. 1.

Pl.'s Mem. in Opp. to Objections at p. 6-7.

Accordingly, it was appropriate to decline to address defendants' waiver argument raised for the first time in their reply.[3] Defendant's objections are denied and Judge Lindsay's R&R is adopted in full.

**CONCLUSION**

Defendants' objection to the R & R is denied and the Court adopts Judge Lindsay's R & R in its entirety. The motion to dismiss the first, sixth, seventh and eighth causes of action is granted. Plaintiff is granted leave to replead the sixth, seventh and eighth causes of action within 20 days of the date of this Order.

**SO ORDERED.**

Dated: Central Islip, New York          s/ Denis R. Hurley
       January 28, 2016                 Denis R. Hurley
                                        United States District Judge

---

[3] The Court notes that (1) plaintiff did not allege any cause of action under NYLL § 741; her whistleblower claim is asserted under NYLL § 215; (2) defendants rely upon only lower state courts decision in support of their waiver argument; and (3) district courts in this circuit have concluded that the compulsory waiver provision in NYLL § 740(7) applies only to whistleblower claims and not to federal and state discrimination claims. *See, e,g., Collette v. St. Luke's Roosevelt Hosp.*, 132 F. Supp.2d 256 (S.D.N.Y. 2001); *Capatano-Fox v. City of New York*, 2015 WL 3630725, *8-9 (S.D.N.Y. June 11, 2015); *Cabrera v. Fresh Direct LLC*, 2013 WL 4525659, at *3 (E.D.N.Y. Aug. 27, 2013).